We'll turn to the next case, United States of America v. Boris Hill-Guerrero. Good afternoon, Your Honors. Please, the Court, I'm Stephanie Carvelin. I'm counsel for Boris Hill-Guerrero. Your Honors, in this case, there was substantial evidence before the Court's plea here was not voluntary. In circumstances where that is evident to the District Court, Rule 11b2 requires the Court to do more than the District Court did. All the District Court did here in terms of determining voluntariness was ask the standard allocution. Was your plea induced by any threats or promises? In this case, Mr. Gil-Guerrero had been on the path to trial since he was brought to the United States more than a year before he entered his plea. Four days before trial was scheduled to begin, the government belatedly turned over discovery. The government had initially believed that no evidence had been recovered from Mr. Gil-Guerrero's phone, discovered they were incorrect, turned over that evidence four days before trial. That evidence, according to Mr. Gil-Guerrero's counsel's assessment, and all this, obviously, is a matter of record, completely changed the landscape of the defense originally. How extensive was the evidence? I'm sorry, Judge? How extensive was the evidence? The evidence was... A chart of phone calls? Yes. Not exactly phone calls. It was essentially this was alleged as a fraud and it was sort of a target list is the sense of it. A spreadsheet of people who had purchased these drugs. Exactly. How many people were on the list? A thousand names, I believe, or a thousand lines. They were on his phone, right? They were on his phone. The significance, Judge, wasn't, in my opinion, was not the extent of the evidence but his lawyer's analysis of what that evidence did to the defense. In front of the district court in their conference about whether or not, you know, what is the effect of this? What is going to be any potential sanction for this discovery violation? Counsel says essentially to the district court, with his client standing there, this destroys the defense as we planned on it for more than a year. Counsel asked the district court for a continuance of one week. The district court declined that. Counsel asked for preclusion. The district court declined that. Two days after, excuse me, three days after that, Mr. Gil Guerrero, after on the record, all over the record, aggressively insisting on going to trial himself, not just through counsel, but directly addressing the district court about he wanted his speedy trial, then changes his mind in light of not just the disclosure of this information, but his lawyer's analysis of it. Mr. Gil Guerrero put in affidavits, and this goes more to the motion to withdraw the plea, but put in affidavits attesting that he believed that at that point his lawyer had abandoned him. He had, Mr. Gil Guerrero had no option but to enter a  plea. Is that the relief you're seeking now, the withdrawal of the plea? Yes. To be able to vacate the plea. Yes, Your Honor. In terms of the voluntariness of the plea, the district court had all that evidence in front of it and did nothing to ensure that the plea was voluntary. I think in this aspect, this case is very similar to the court's decision in United States v. Johnson, a 2017 decision of this court, in which the defendant pled guilty to a crime that subjected him to a mandatory minimum of life in prison. During the plea allocution, the government and the district court discussed the application, potential applications of the guidelines. Nevertheless, the government twice said the guidelines were trumped by the fact that he faced a mandatory minimum sentence. Mr. Johnson said he understood that. He discussed the consequences of pleading guilty to, with his lawyer. And four months later, he sought to withdraw his plea, claiming that it wasn't voluntary. In this case, something very similar happened, which is there was re, and this court granted, granted relief in that case and found that the plea was not voluntary. What happened after his affidavit was filed with the district court? The district court did not hold an evidentiary hearing. Your, this, Your Honors, this court has set out standards that a district court should consider in determining whether or not to grant a motion to withdraw a plea. Obviously, Rule 11 sets forth the standard of, you know, if there is a fair and just reason. The district court made no determination of the validity of . . . Denied, just denied it? Denied it. Didn't have an evidentiary hearing. Didn't make any factual findings on the allegations. I mean, Mr. Guerrero said, I had no plea, but no option but to enter a plea of guilty in this case. The district court also didn't consider any of those factors that the . . . The thing that troubled me about the district court's colloquy at the plea was, or, yes, I think at the plea, at A496-7 and 8, he said, I'm at a loss for how to reconcile that . . . no. He said there was nothing new. That's exactly right, Your Honor. He said that the new material knocked a hole and shattered his defense. That's exactly right, Your Honor. The district court made a decision about the motion to withdraw the plea based on a completely erroneous either factual finding or logical analysis, which was that there was nothing new about this evidence. We should have at least asked, has this new evidence been responsible for your change of plea? That would have been appropriate, wouldn't it? I think it would have been appropriate to make a greater inquiry during the Rule 11 colloquy, and I think it would also have been appropriate to make that determination during the decision on the motion to withdraw the plea. I mean, saying, like, the evidence was not new in this case is the equivalent of saying someone's charged in a narcotics conspiracy. My co-defendant was found with four kilograms of cocaine in his house. I was found with no drugs. Four days before trial, the government says, oh, no, we found four kilos in your closet also. That is new evidence. That fundamentally undermines my view as the defendant of my options in that case. Does it matter that it was on his phone and they couldn't open it because they didn't have the password? Wasn't that the problem? No. As it turned out, they could open it and they did open it. They were able to remove the SD card from the beginning. Apparently, the government was unaware of that fact because of some internal filing issue with the DEA. There's no question that it was a Rule 16 error. No. The government conceded that, and the district court provided no remedy for that. Mr. Gil Guerrero was standing there when the district court provided— Does it matter, though, it was on his phone? No, Judge. In terms of—I think the district court also mentioned something. Well, it's not a surprise to him. That's an analysis that's appropriate when a defendant claims a Brady violation. In that case, this Court and other courts have said, okay, it's not a surprise, therefore, there's been no prejudice to you, the fact that the government didn't turn it over. That's not the case here. The significance of this evidence was the fact that the government connected it to Mr. Gil Guerrero. If the government has evidence about co-defendants, that's an entirely different analysis. This was new, and it was a surprise, and it should have given rise to the district courts taking greater care and ensuring the plea was voluntary. The question is more like this, which is, the spreadsheet was on his phone. One of your arguments is he didn't have enough time to really analyze it in the four days he had left before trial. If it was on his phone, and it was a spreadsheet in his records, isn't that relevant? Judge, my argument is not that he didn't have time to analyze it. That was the argument the trial counsel made. My argument is, in light of all of those circumstances that existed, the district court had an obligation, as it did in Johnson, to take greater care than in the standard case when a defendant enters a plea two weeks or two months into the process, into the proceedings, prosecution, without any indication that there's any problem here. Mr. Gil Guerrero had turned down a plea of 63 to 78 months. He took a plea with a Pim and Tell letter on the day trial was supposed to start, with a Pim and Tell prediction of This is what he got, 180 months. No, he got 50 months. He got a substantial reduction, a non-guideline sentence. So there was a substantial reduction. But in these unusual circumstances, I think this falls completely into these court's cases, that say there was a greater obligation to make an inquiry at the Rule 11, and the district court abused its discretion, denied the motion to withdraw the plea, based on this difficult-to-understand assertion that there was nothing new or surprising about this evidence. Will I have you for a quick question? Yes, Your Honor. I think you quite rightly referred to him as Mr. Gil Guerrero. Gil is his surname, right? Yes, sir. And Guerrero is his mother's name. That's my understanding. Yeah, that's fine. That's what I thought. But that's extra record information. Extra credit? You get extra credit? I get extra credit. I'll take any credit I can get for my client, Your Honor. Okay. So we'll make sure that the caption reads, Gil Guerrero. We'll put a hyphen, so we don't lose track of him. Go ahead. May it please the Court, my name is Alex Rossmiller. I'm an Assistant United States Attorney in the Southern District of New York. Were you the trial counsel? Yes, I was, Your Honor. You discovered this Rule 16 violation at some point close to trial, turned over the information to the defendant as soon as possible? Yes, my colleague and I turned it over, and I think the record reflects . . . Why did you resist a one-week delay? Your Honor, there are a variety of reasons in the record that go back and forth between trial counsel and the judge regarding a potential delay. My colleague and I represented to the relevant witness who would testify about this at the end of trial, providing at least approximately one week between the disclosure . . . But he was at trial all day during that week. It wasn't really time. The lawyer said he wanted to look at the Brady issue, wanted to do some research. Yes, Your Honor. The evidence that we're discussing here, the entirety of the spreadsheet was one thousand and one lines. Depending on how you print it, it's between ten and twenty pages of individuals, but the government did represent to the court that we simply intended to show the single first page of this document, and that the defense counsel would have . . . It doesn't make a difference the length of it. As Judge Droney asked, the important part about this is that it was found on this defendant's phone. Isn't that correct? It didn't make a difference how long it was. It was on his phone, and that's what is so highly incriminating. Yes, Your Honor. It certainly was incriminating evidence, and immediately when the government discovered the evidence, it turned it over to defense counsel, which would have had several days prior to trial to process . . . Two days, as I read the timeline. Thursday to the Monday of trial, Your Honor, to process the evidence, and then additional days to decide how to deal with it going forward. But the question for the court is . . . But this was an error of the prosecution, and yet you resisted a one-week delay. That seems to me sort of mean-spirited. I understand, Your Honor, and certainly the district court has very broad discretion in scheduling issues. If you supported the delay, the district court, I'm sure, would have granted it. I can't speak to that, Your Honor, but certainly any trial has a number of moving pieces. This was an extraordinarily lengthy investigation with . . . an international investigation with, of course, witnesses traveling for trial, weeks and months of preparation, people's schedules who were lined up. There, I think, were ample reasons for the trial to go forward on time, and ample time for defense counsel to process this information. The question really is whether the defendant's will was overborne in the plea. In other words, whether the plea was rendered involuntary through this process, and the answer to that is simply no. The defendant here pled guilty knowingly involuntary before Judge Crotty. The district court complied with Rule 11 in all respects, thoroughly satisfying itself that the plea was voluntary and that the defendant was competent to enter the plea. The defendant himself stated under oath that his plea did not result from force, threats or other promises. He stated under oath that he was satisfied with his counsel and his counsel's advice and representation. His answers confirmed that he had not been coerced into pleading guilty, and his engagement throughout the process showed that he was aware, was with it, was following along, and all of these processes satisfied Rule 11. Why is Johnson different? Johnson is different because in Johnson, the defendant's . . . Johnson's different for two reasons, Your Honor. The first is Johnson was actively misled by the court in the colloquy during the Rule 11 proceeding. The defendant was led to believe both by the prosecutor and by the judge that there was some alternative sentence other than what in fact was a mandatory sentence. So for purposes of the Rule 11 proceeding, that is the stark difference between this case and Johnson. With respect to the procedure, it's also notable that in Johnson, the defendant claimed in his motion to withdraw the plea that the court had committed error. So that was a preserved objection in Johnson where it is not here, which brings us to the motion to withdraw denial. And it's clear that the court, the district court did not abuse its discretion in denying the motion to withdraw the plea, largely for the same reasons that I've just described. The motion to withdraw the plea was based on the argument that the plea was involuntary and not, notably, on any Rule 11 infirmity, and was denied by the district court for precisely the same reasons this court should deny those arguments on appeal. The diminished likelihood of success at trial simply does not vitiate the voluntariness of a plea. No, it's when it came. The diminished likelihood of success at trial happened two days before this trial was supposed to start, after a year's preparation, according to his trial lawyer below. That's true, Your Honor, but it certainly is . . . That's sort of it. As the judge said, it knocked a hole in the defense. Isn't that the judge's language? It is, Your Honor, and I believe that's at Appendix 495. It's also true that the government stated, and it's in the record, that the government had recordings of the defendant with a co-conspirator discussing the cashing of extortion payments, records from MoneyGram and Western Union showing the defendant directly received . . . He was not part of the particular conspiracy with which he was charged, but another conspiracy. Well, yes, of course, he claimed that, Your Honor, but I'm saying that these pieces of evidence went directly to his participation in the charged conspiracy, and I should say it's certainly not the case that the government careened toward trial with no evidence connecting the defendant to this particular scheme and happened to get lucky four days before. In addition to the evidence that I've just described, there was also 3,500 material disclosed shortly before trial, revealing that there would be two co-operators testifying and testifying with respect to the defendant's particular participation. You agree this case has to be remanded, don't you, because of Honeycutt? Yes, Your Honor, for forfeiture, and I believe we put in a letter reflecting that. You did. Let me ask you about this untimely Rule 16 disclosure. Am I right to think that the government had previously handed over an identical list of purchasers and prescription drugs? Is that right? Your Honor, I don't recall if a specifically identical list had been turned over, but . . . Let me back up, actually. My real . . . I guess what I'm aiming at is, I take it it's your view that the untimely Rule 16 disclosure was not prejudicial or unduly prejudicial to the defendant. Is that right? Your Honor . . . Doesn't that have to be your argument? Yes, of course, and certainly that any prejudice was . . . could be addressed through the period of time that the district court and the government acknowledged would be allowed between the disclosure and its introduction at trial. Which was how many days? Which would have been at the end of trial, so I think the record reflects that we expected it would have been approximately a week following the disclosure. Is it accurate that the untimely disclosure, the only thing new about it was the fact that the identical list was found on Gil Guerrero's phone? Is that right? I'm sorry, Your Honor. I think I may have missed the first part of the question. Was the only difference that it was found on his phone? Yes. It certainly was consistent with other lists that would have been evidenced at trial, and as the district . . . It was on his phone. That's what made it incriminating, correct? Yes, of course, and those other lists would have been incriminating as to the scheme in general, as would have been the cooperator testimony, the recordings of the defendant talking about this scheme, and as the district court noted, the existence of lists in general were very common in the investigation, would have been introduced, and these lists in particular, and I'm quoting here, were not new, nor were they voluminous or complex. That's at the appendix at 495. We're talking about less than twenty pages of what the district court described as familiar material, and obviously as the court referenced earlier, no surprise, even if he, the defendant, was disappointed in the late production of the material, and that's at appendix 495. The court consistently said that this was not new, because he had seen this material from other defendants. I think what the district court said was that this type of material was not new. This was not a . . . It was new to this defendant to attach him so closely to it, wasn't it? It was an additional piece of evidence to attach the defendant to a scheme . . . To this defendant. . . . for which there was otherwise voluminous evidence, including evidence that had been turned over very recently before the defendant decided to plead guilty, including the identities and 3,500 material with respect to cooperators, and it's notable, and in the record, that the defendant had previously threatened to out the cooperating witnesses, and that he had asked individuals he believed might be cooperating with the government to lie about his role, and so just a few days before trial, or shortly before trial, he finds out the individuals who will be testifying against him, he gets this new evidence, and again, the question is whether this made him unable to evaluate a plea, whether he was subject to actual or threatened physical harm, mental coercion overbearing his will, or sheer inability to weigh his options rationally. Is it your view that Judge Crotty made findings that there was no prejudice here to the defendant? Your Honor, I don't specifically recall the district court's finding . . . You just mentioned, you described his comments earlier, and I don't remember the exact words. What is it that . . . how did he respond to the claim made by defendant's counsel? Your Honor, to the claim, my recollection is that the district court went through the process of a Rule 16 issue, and so he noted that the material had already been turned over, that it had been made available to defense counsel, and then addressed whether there was a remedy that was necessary. Defense counsel requested an adjournment. That's, in effect, the finding that there was no undue prejudice? Yes, Your Honor. Certainly the evidence . . . if what the court is asking is whether the evidence was allowed to be used at trial, the district court did deny defendant's application that the evidence be precluded. I think that's right, Your Honor, and again, the district court . . . in the colloquy noted, and the government proffered, that the government intended to call a technician at the end of the trial, approximately one week later, to introduce the first page, and it certainly was evidence that was bad for the defendant, but the question is whether that made him unable to voluntarily plead guilty? Well, it would have been helpful, wouldn't it, if the district court had asked him those very questions? Does the appearance of this evidence so close to trial, does that affect your voluntariness to enter into this plea? That is exactly what the relief in Johnson was. Yes, I think that would have been an unusually specific question in the context of a Rule 11 plea. It would not have been appropriate, but certainly nor is it necessary, Your Honor. Subject to any other questions, the government will rest on its brief. Ms. Carver. Yes, Your Honor. A couple of factual things. The district court did not mention force in the plea allocution. The district court asked Mr. Hill-Guerrero if anybody made any threats or promises to induce him to plead guilty. That's at A383 of the appendix. He did not specifically, the court did not mention force, nor did the court explicitly ask whether the plea was voluntary. I mean, obviously, the issue here is not magic words. This court has said that over and over again. I have no disagreement with that. There's a very substantive question here, which is in these unusual circumstances of this case, did the district court discharge its obligation under Rule 11 to ensure that the plea was voluntary? We're also not asking for a huge increase in the burden on the district court. You mentioned Judge Pooler. This could easily have been satisfied by one or two more questions. Let me ask you, what do you think your . . . if you were to succeed on this appeal, what do you think you will have achieved? What's the remedy you want from us, and what is it that would take place before the district court upon remand? That is an excellent question, Your Honor, and the question is what my client hopes to achieve. My client is in the Dominican Republic. He was returned following his extradition here once the case was completed, and he served his sentence. The remedy we're seeking is to have the plea vacated. In terms of the procedure thereafter, I believe the government would have to again seek extradition. Mr. Hilguerrero did agree to be extradited to the United States. He did not fight extradition previously. So the plea would be vacated, and the case would proceed as any other case. He already served his fifty months? He's already served his fifty months. Now he's in the Dominican Republic? That is correct. Was he sent there by our government? He was originally residing in the Dominican Republic. He was extradited here to answer these charges. As I said, he agreed to be extradited, but he was brought here through the extradition process and then returned according to the extradition process once his sentence was completed. So if he withdrew the plea, would he want to have a trial now? Your Honor, every time I speak to a client in a case without going into what I've advised him in this case, I always describe to a client the potential benefits and detriments of seeking any relief in this course, and I follow that path in this case. As Judge Pula was suggesting, having already served, I would just note that the red brief says that Hilguerrero is serving his sentence, so we're glad to have that clarified. So he's already served his sentence? He has. Yes. So on what theory would you want to send this back, or what is he ... I guess I'm repeating myself, what's he getting out of this? He gets the opportunity to go to trial and maybe sent, what, to send to jail again, or what? You're not going to claim any double jeopardy? I don't think I'd be in a position to, given that he's seeking the relief. He believes that he was wrongfully convicted, that he did not have an adequate opportunity to consider his options, that his plea was not voluntary, and he wants to vindicate that right. Just one other quick factual matter. In Johnson, it was exactly what happened here. Mr. Johnson wrote a letter to the district court. This is the way it's explained in the decision. He wrote a letter to the district court pro se saying, my plea was not entered into with understanding of the consequences. Something like that. It was a pro se letter. He did not reference Rule 11. Thank you very much. Thank you, counsel. You were on Johnson, weren't you? Hmm? You were a member of the panel, weren't you? I don't know. Yeah. That may be true. Thank you very much.